IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIE SPRINGER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 14-cv-0319-MJR |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

In July 2012, Willie Springer was indicted on a charge of being a felon in possession of a firearm. He subsequently pled guilty to the charge without the benefit of a plea agreement, and he was ultimately sentenced to 96 months in prison. Springer did not file a direct appeal, but on March 10, 2014, he filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. While his petition is extremely difficult to follow, Springer seems to advance four basic arguments—he maintains that his lawyer failed to properly challenge the traffic stop that led to his arrest and the video evidence of that arrest; that his lawyer failed to adequately represent him at the plea stage of the case; that his lawyer did not challenge some of the facts used to gird his sentence; and that his lawyer did not conduct a reasonable investigation into the evidence or subpoena certain witnesses that could have aided in his defense. Springer later moved to supplement his § 2255 petition with an argument that his plea was improper because it was taken by Magistrate Judge Wilkerson rather than the

undersigned district judge. The United States has responded to Springer's petition and Springer has filed his reply brief, so the merits of Springer's original petition and his motion to supplement that petition are now before the Court for a ruling.

## Background

On July 16, 2012, Trooper Derek Cullen with the Illinois State Police was on patrol in East Saint Louis, Illinois. A little after midnight, Cullen observed a black vehicle traveling on Martin Luther King Drive; the vehicle had no front registration plates and had very dark tinted windows. Given the lack of front plates, Cullen turned on the emergency lights on his cruiser to initiate a traffic stop. The black vehicle turned into a parking lot near an apartment complex and Cullen followed. Just as the black vehicle started to pull into a parking spot, the passenger side door opened and Willie Springer jumped out, holding a large rifle in his hand. Cullen immediately jumped out of his own cruiser and took cover behind his car, fearful that Springer would begin shooting. He saw Springer run around the passenger side door and towards the courtyard of the apartment complex, so Cullen gave chase and remotely deployed his canine, Loco, from his cruiser. With Loco alongside him, Cullen yelled at Springer to drop the gun and to stop running, but Springer declined. As Springer continued to run and more residents from the complex came outside to watch, Cullen ordered Loco to apprehend Springer, and Loco managed to knock Springer to the ground. Springer rolled around towards Cullen, still holding the rifle, and Cullen again told Springer to drop the rifle. At that point, just as Springer was pivoting towards Cullen with the rifle,

Springer finally dropped the rifle, saying something to the effect of "What gun?" and indicating that he did not know what weapon Cullen was referencing.

As Springer dropped the gun, he began to push up off the ground to get to his feet. Cullen kicked the gun behind him so that Springer would have trouble reaching it and again told Springer not to move. Springer finally stopped moving and Cullen told him to lay on the ground with his hands exposed. A short while later, backup arrived to help Cullen, and Springer and his rifle were secured. Cullen and other officers searched the vehicle that Springer fled from and located an empty 50 round magazine on the passenger seat; the magazine fit the rifle that Springer was carrying. Police also found two Halloween masks in the car, one in the front area and one on the back seat.

Springer had a prior felony conviction for attempted armed robbery, so he was indicted on a federal charge of being a felon in possession of a firearm on July 17, 2012. He was appointed a federal defender, and the defender began plea negotiations with the United States concerning the gun charge. On November 2, 2012, the Assistant United States Attorney sent a written plea offer to Springer's federal defender, offering to enter into a binding plea with Springer for a sentence of seventy two months in prison. The United States tendered a formal plea agreement a little over a week later, but that plea agreement was rejected—Springer's federal defender told the United States that Springer did not wish to enter a binding plea agreement but instead wanted to plead "open" instead. On November 21, 2012, Springer pled guilty before Magistrate Judge Wilkerson. Springer was later informed that the plea before Judge Wilkerson was viewed as a report and recommendation to the undersigned that Springer's plea

before Judge Wilkerson should be accepted. Springer indicated that he had no objection to that recommendation, insisted that no one had promised him anything to press him into a plea, and asked the undersigned to accept his plea. The undersigned did so.

To tee up Springer's sentencing, the Probation Office prepared a presentence investigation report. Springer was assessed an offense level of 21 and a criminal history category of II, leading to an advisory range of 41-51 months. Springer's defender filed an objection to the presentence report challenging the application of a two-level enhancement pursuant to Section 3C1.2 for reckless endangerment—the defender was of the view that the enhancement was not proper because Springer's rifle was unloaded when Springer fled into the courtyard. The United States filed a response citing Seventh Circuit precedent that it said clearly showed that the enhancement was proper.

The undersigned held a sentencing hearing on April 19, 2013. At the start, the federal defender withdrew the objection to the reckless endangerment enhancement and indicated that there were no objections to the presentence investigation report. Springer went on to admit that everything in the report was true, correct, and accurate. The United States then offered testimony from Trooper Cullen, who testified consistent with the account above, as well as a video recording of Cullen's in-car camera, which corroborated Cullen's account of what occurred on the night of Springer's arrest.

Part of Springer's advisory sentencing range was based on his criminal history, and one of his crimes—a 1999 conviction for attempted armed robbery—was of particular interest to the United States at the sentencing hearing. As it concerned that conviction, the United States called Major Thomas Coppotelli, the Assistant Chief of

4

Police of the Collinsville Police Department, to testify. Coppotelli stated that he was involved in a homicide and traffic accident investigation involving Springer in 1997. In November of that year, police were called to the intersection of 29th Street and Trenley Avenue in East Saint Louis concerning an accident involving a pickup truck and a Chevy Corsica. They found Gerald Little, a local drug dealer, in the back of the pickup truck, and Christopher Price, an associate of Little's, underneath the truck. Police also found two individuals in the Corsica. Little had been shot several times in the torso and head and died on the way to the hospital; Price had been shot several times in the torso and head and was already deceased; and the two individuals in the Corsica were transported to the hospital for minor injuries and treated. Two handguns were recovered from the cab of the truck, and an examination of the scene produced several spent shell casings and projectiles. An investigation led police to five men, including Springer, who were believed to have been involved in the deaths of Little and Price.

As a part of the police investigation, Coppotelli interviewed Springer twice, and Springer finally admitted to Coppotelli that Springer and four others had decided to rob Little, the presumption being that he would have money because he dealt narcotics. The group came up with a plan where Springer and a compatriot would wait for Little to come to the compatriot's home, and three of Springer's friends would station themselves outside of the home in preparation for Little's arrival. When Little arrived at the door, Springer or his compatriot would use a two-way walkie talkie to let the other three know that Little had arrived, and then the trio, who were armed with guns and wearing masks, would descend on Little and rob him. To make sure the three

5

robbers would not be recognized, Springer and two of the other members of the group bought ski masks and other black clothing for the three robbers to use.

As planned, Little and Price came to the compatriot's home on November 6, 1997, and Little got out of the truck to head into the house while Price remained in the pickup truck to serve as Little's driver. Springer and his compatriot saw Little getting out of the truck and heard him yell greetings toward the house. The compatriot went to the door and met Little but told him to hold on as the compatriot needed to find his keys to open the door. At that time, Springer and his compatriot heard several shots being fired outside the door. Little then took off running towards the pickup truck and was shot several times by one of Springer's associates, and Price got out of his truck, seemingly to see what was going on. One of Springer's associates closed on the pickup truck and ordered Price back into it. That associate got into the truck with Price, while the other two grabbed Little, threw him in the bed of the truck, and then jumped in with him. Springer and his compatriot stayed inside the home till the pickup drove off.

According to Major Coppotelli, some of the other associates admitted that they left the scene with Little and Price in the pickup truck, with Price driving at the threat of gunpoint. There was some disagreement among the associates about what happened next, but either way, the car was involved in an accident and Price rolled out of the car. Price then tried to get away by crawling underneath the truck, but was shot multiple times by at least two of Springer's associates. One of the associates also shot Little again, to make sure that he was dead. All three individuals then fled the scene. Those three individuals, along with Springer and his compatriot at the house, were ultimately

charged with felony murder in Illinois state court. To avoid the felony murder count, Springer eventually pled guilty to a charge of attempted armed robbery, and was sentenced to fifteen years of incarceration in an Illinois prison.

Based on Springer's involvement in the 1997 attempted robbery, the fact that the 1997 incident led to the deaths of two individuals, the fact that Springer's conduct in this case occurred near a residential area, and the sinister nature of the items Springer possessed on the night of his arrest in this case, the United States sought an above guidelines sentence of 97 months. Springer, for his part, asked for a within guidelines sentence of 51 months, insisting that his flight was motivated by fear and that he was not preparing to commit another crime on the night of his arrest. The undersigned evaluated the 18 U.S.C. § 3553(a) factors and decided that a 96 month sentence was the right path. That sentence was based on the fact that there was a potential for danger to bystanders, mainly because Trooper Cullen would have been within his rights to shoot Springer but might have missed, or because other residents in the complex might have tried to shoot at Springer, putting Springer, other civilians, and Cullen in danger. It was also based on the fact that Springer's gun and the masks in the car suggested that Springer was about to rob someone that night, and on the fact that his 1997 conviction was underrepresented in his criminal history, for the crime resulted in two deaths.

Springer did not appeal his conviction or his sentence. However, on March 10, 2014, Springer filed a motion to vacate or correct his sentence pursuant to 28 U.S.C. § 2255. That petition and Springer's supplemental motion are now ripe for review.

### Discussion

Springer filed his petition pursuant to 28 U.S.C. § 2255, which allows a defendant to attack the validity of his sentence if it was "imposed in violation of the Constitution or laws of the United States," if the sentencing court imposed sentence "without jurisdiction," if the sentence was "in excess of the maximum authorized by law," or if the sentence is "otherwise subject to collateral attack." Springer comingles a number of conclusory and difficult to follow arguments throughout his opening petition, but he seems to assert four basic grounds for attacking his guilty plea or his ultimate sentence. He says that his appointed counsel was ineffective for not challenging Trooper Cullen's stop and the video evidence of that stop; that his counsel did not perform adequately at the plea stage of the case; that his counsel did not challenge some of the facts laid out in the presentence report or put forth at the sentencing hearing; and that his counsel did not conduct a reasonable investigation into the evidence against Springer.

The Court will begin with Springer's argument that his lawyer was ineffective because he failed to challenge the July 2012 stop or the video evidence of it. To make out a claim of ineffective assistance, a petitioner must show that his counsel's performance was deficient and that, but for counsel's performance, a "reasonable probability exists that he would have received a different sentence." ***Mertz v. Williams*, 771 F.3d 1035, 1043-44 (7th Cir. 2014).** Both aspects of this test must be demonstrated by a § 2255 petitioner to succeed on a habeas claim—if a prisoner fails to make an adequate showing on deficient performance or prejudice, he has not established ineffective assistance. ***United States v. Montgomery*, 23 F.3d 1130, 1134 (7th Cir. 1994).**

8

Springer's first claim trips over the deficient performance requirement for at least two reasons. For one, all of the failures related to Cullen's stop and the video recording of it concern counsel's conduct before the plea, and Springer's complaints about his lawyer now are inconsistent with what he told Judge Wilkerson about his lawyer's performance when Springer pled guilty. At the plea colloquy, Springer told Judge Wilkerson that he was satisfied with his lawyer's representation, that his lawyer had done everything that Springer had asked, and that Springer had ample opportunity to go over his case with his lawyer. Springer's statements at the plea hearing are entitled to a presumption of truthfulness, and Springer has not alleged enough to undercut that presumption now. ***See Barker v. United States*, 7 F.3d 629, 634 n.5 (7th Cir. 1993).**

More fundamentally, even if Springer had not heaped praise on his lawyer at the plea hearing, his ineffective assistance claim related to the stop and the video would still fail, for any motion attacking those items would have been frivolous. ***See Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001).** As it concerns Cullen's stop, an officer may make an investigative stop of a person based on a well-founded suspicion that the person has been or is about to be engaged in criminal activity, ***United States v. Smith*, 697 F.3d 625, 631 (7th Cir. 2012)**, and Cullen had a well-founded suspicion here. When Cullen ran after Springer and ultimately stopped him, Springer had just jumped out of a car that had been pulled over for a legitimate traffic stop, he was holding a rifle, and he was running towards a residential complex with that rifle on open display. That is more than enough to justify reasonable suspicion for a stop, meaning that any motion challenging the stop would be bunk. As it concerns the video recording of the stop,

there is nothing to suggest that the video recording of the events was faulty or vulnerable to any technical challenge. On the contrary, Trooper Cullen's testimony corroborates the video, and Springer's non-specific arguments concerning investigations that might have discovered a problem with the video do not come close to satisfying his burden to prove ineffective assistance. *E.g., Santos v. United States*, 298 F. App'x 519, 523 (7th Cir. 2008); *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004); *United States v. Hubbard*, 929 F.2d 307, 310-11 (7th Cir. 1991).

Springer goes on to attack his attorney's performance at the plea stage in a variety of ways, but those attacks lack merit because Springer has not demonstrated deficient performance. Springer first faults his lawyer for not working out a plea agreement and instead permitting him to plead "open" (without the benefit of a plea agreement), but Springer admits in his reply brief, when presented with evidence from the United States and from Springer's appointed defender himself, that his appointed defender did secure a plea agreement and that Springer himself rejected it. Springer goes on to argue that his lawyer had an obligation to work out a far better plea agreement than the one he rejected, but a lawyer's performance does not dip into the land of deficient merely because he failed to work out the absolute best plea possible. *See United States v. Springs*, 988 F.2d 746, 749 (7th Cir. 1993). Springer finally maintains that his lawyer did not explain the consequences of his plea and made promises as to what the undersigned would do at sentencing—the appointed defender, says Springer, did not tell Springer of the possibility that his sentence could exceed sixty months if he pled guilty without the benefit of a plea agreement and promised him that

10

his sentence would not go over that amount. Springer's problem is that he has not offered much more than naked assertions concerning what his lawyer said as it related to sentencing possibilities or what his lawyer promised, *see Galbraith v. United States*, **313 F.3d 1001, 1008-09 (7th Cir. 2002)**, and even if he had gotten specific enough to make out a credible challenge, the aspersions Springer casts on his lawyer fly in the face of Springer's admissions before Magistrate Judge Wilkerson and the undersigned. As the Court already said above, Springer told Judge Wilkerson that he had ample opportunity to discuss his case with his lawyer and that he was satisfied with his lawyer's able performance, and those admissions cast serious doubt on his statements now that his lawyer did not lay out the consequences of a plea. Putting the proverbial nail in the coffin, Springer told the undersigned at the sentencing hearing that no one had made any promises to him to get him to plead guilty. As the Court already said, Springer's statements to Magistrate Judge Wilkerson and the undersigned are entitled to a presumption of verity, and Springer has not said enough to put that presumption into doubt. *See Hutchings v. United States*, **618 F.3d 693, 699 (7th Cir. 2010).**

Assuming Springer had somehow offered up enough to suggest deficient performance related to his plea, his ineffective assistance claim concerning the plea would still fail for at least two reasons, both having to do with a lack of prejudice. For one, to make out an ineffective assistance claim concerning a plea, a defendant must not only allege that his lawyer bungled the plea but that there is a reasonable chance that the sentence would have turned out differently with better advice, as it might if the petitioner would not have pled guilty at all or would have pled guilty to a more

11

beneficial plea agreement rather than the plea scenario he chose. *E.g., Lafler v. Cooper*, **132 S. Ct. 1376, 1385 (2012);** *Martin v. United States*, **789 F.3d 703, 706-07 (7th Cir. 2015);** *Koons v. United States*, **639 F.3d 348, 351 (7th Cir. 2011).** In this case, the United States and Springer's lawyer disclaim any other plea offers beyond the first one and Springer has not offered any non-conclusory allegations about other agreements, so Springer's claim turns largely on whether he would have opted to go to trial or would have accepted the first binding plea agreement put to him by the United States. While Springer's briefs are extremely difficult to parse, he never clearly alleges that he would have taken either course of action, meaning that his plea-related claim must fail.

Even if the Court assumed that Springer would have taken the initial binding plea agreement or that his lawyer would have secured a better binding or non-binding agreement, Springer has still suffered no harm. As the Court already said, Springer does not allege that he would have gone to trial rather than plead guilty, probably because he does not want to jeopardize any acceptance of responsibility credit he received by sparing the United States of a trial. For Springer to suffer prejudice, then, there must at least be a reasonable probability that the undersigned would have accepted the first binding plea agreement or a second more favorable binding plea agreement, or would have been inclined to sentence Springer to a lower sentence than the one he received if he had pled guilty pursuant to a non-binding agreement. *See Edwards v. United States*, **612 F. App'x 390, 392 (7th Cir. 2015).** None of those paths would have come to fruition. Given Springer's criminal history, the danger that he posed to the community during the chase through the residential complex in July 2012,

and the fact that the presence of the rifle and the masks indicated that Springer was going to commit another crime on the night of his arrest, the undersigned likely would have rejected the first agreement and any better one, and would have still sentenced Springer to 96 months even if there was a non-binding plea agreement in place.

Springer next insists that his appointed lawyer was deficient because he failed to challenge some of the justifications for his sentence, mainly those linked to the reckless endangerment enhancement and the undersigned's decision to vary Springer's sentence upward because, among other things, the circumstances of Springer's arrest indicated that he was about to commit another crime when he and the driver of the vehicle were pulled over by Trooper Cullen. As to the endangerment enhancement, Springer insists that his lawyer erred by not introducing evidence that might have showed that Springer fled from Trooper Cullen on the night of his arrest not out of an effort to impede the administration of justice, but merely because Springer wished to avoid being bitten by a police canine. Springer does not identify any witness that would have offered that kind of testimony, and even if he did the undersigned would not have credited it, as Trooper Cullen's testimony and the corroborating video recording leaves no room for doubt that Springer immediately fled the scene when Cullen pulled the vehicle over, rather than fleeing at the sight of Cullen's canine partner. As to the Court's decision to vary Springer's sentence upward partly because he was carrying a rifle and had access to masks on the night of the arrest—facts that indicated to the undersigned that Springer was about to commit another crime that night—Springer faults his lawyer for not challenging that conclusion. The rub is that Springer's lawyer did challenge the

13

undersigned's line of thinking on that front, and the Court is hard pressed to come up with any additional challenge that counsel could have employed to change the Court's mind. In any event, Springer does not specifically flesh out the kind of challenge that would have made a difference to the Court's thinking, so his ineffective assistance claim concerning some of the facts and conclusions at sentencing must be rejected.[1]

Springer's fourth challenge, and the final one in his petition, looks to be a catch-all one, primarily focused on his lawyer's failure to confront certain witnesses or investigate his case. Most of those challenges are vague and non-specific to Springer's case, and the Court must reject conclusory challenges like that as a matter of course. *E.g., United States v. Robinson*, 467 F. App'x 100, 102 (3d Cir. 2012); *United States v. Banks*, 355 F. App'x 123, 126 (10th Cir. 2009); *Mitchell v. United States*, 359 F.2d 833, 836-37 (7th Cir. 1966). To the extent Springer gets specific with these challenges, his claims focus primarily on the testimony surrounding Trooper Cullen's stop, the video of that stop, and the evidence offered at the sentencing hearing indicating that Springer was going to commit another crime on the night of his arrest. Those arguments must be rejected for the reasons already set forth above, namely that any additional questioning or confrontation by Springer's defender would have gone nowhere. Springer also insists that his lawyer did not conduct an adequate investigation into his case before his

---

[1] Springer also says that the Court's decision to vary upward partly based on the rifle and masks violates the Supreme Court's decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), as the undersigned made those factual findings rather than allowing a jury to make them. But *Alleyne* and cases like it require factual findings by a jury rather than a judge only when the facts affect either the statutory maximum or the statutory minimum. *See United States v. Garcia*, 754 F.3d 460, 473 (7th Cir. 2015). Springer was sentenced within the statutory range, rendering any *Alleyne* challenge meritless.

plea and sentencing, but he offers little in the way of what that investigation would have looked like or what it would have revealed, meaning that he has not met his burden to make out ineffective assistance. *E.g., Hardamon v. United States*, **319 F.3d 943, 951 (7th Cir. 2003);** *United States v. Balzano*, **916 F.2d 1273, 1273 (7th Cir. 1990).**

That covers most of the arguments in Springer's petition, but as the Court already mentioned, Springer has peppered a number of other vague and conclusory arguments throughout his 42 paged typed memorandum in support. Among other points, Springer includes a summary of the law concerning whether a federal sentence is reasonable or unreasonable. He also includes large swaths of what look to be cut-and-paste summaries of various federal cases, without detailing how those cases bear on the facts of his own conviction and sentence. Springer may have structured his memorandum of law in this fashion as a way of increasing his chances of success on appeal, his planned argument being that the Court missed one of his many challenges. Out of an abundance of caution, the Court stresses that it has reviewed all of Springer's additional challenges and finds that none of them have merit, primarily because Springer has not specifically laid out, for these undeveloped challenges and many of his others, how his counsel was deficient or how he suffered prejudice stemming from his counsel's conduct. *See Barauskas v. Lane*, **946 F.2d 1292, 1295 (7th Cir. 1991).**

With the arguments in Springer's § 2255 petition dealt with, the Court must also assess a motion to supplement that Springer filed six months after his original petition. In that supplement, Springer insists that his conviction and sentence must be set aside because a magistrate judge took his plea rather than the undersigned district judge.

15

Even if allowing an amendment for an argument that could have been raised in Springer's original petition would be proper on the circumstances here, there is no point in allowing the motion because Springer's supplemental argument would be futile for two reasons. For one, Springer does not characterize his argument as a failure on the part of his lawyer to perform adequately but instead as a direct error by the Court. That kind of error could have been raised in a direct appeal of Springer's sentence, but Springer did not file an appeal and he offers no cause in his supplement to explain why he did not file the challenge earlier. *See Prewitt v. United States*, **83 F.3d 812, 816 (7th Cir. 1996).** More fundamentally, even if Springer packaged the magistrate plea point as an ineffective assistance claim, the claim would still fail. Springer is right that a magistrate judge cannot accept a plea in the entirety, but he can conduct a plea colloquy and submit a report and recommendation concerning the plea, which the district judge can review to accept or reject a plea. *See United States v. Harden*, **758 F.3d 886, 891 (7th Cir. 2014).** A review of the record shows that is what ultimately happened here. Judge Wilkerson accepted the plea, but the undersigned gave Springer an opportunity at the sentencing hearing to back out of the plea or to allow the undersigned to interpret Judge Wilkerson's conduct as a report and recommendation concerning the plea to the undersigned, which the undersigned would accept. Springer told the undersigned that he wanted the Court to read his plea before Judge Wilkerson as a report and recommendation, which he asked the Court to accept. That conduct presents no problem under *Harden*, meaning this plea-related challenge must fail.

That does away with all of Springer's claims of error, but there is one other closing item. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant, as the applicant cannot appeal without one. The habeas statute provides that a certificate may issue only where the petitioner "has made a substantial showing of the denial of a constitutional right," **28 U.S.C. § 2253**, as would be the case when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, **529 U.S. 473, 484 (2000).** Based upon the record before it, the Court concludes that reasonable jurists would not find Springer's points debatable, so the Court must deny a certificate of appealability.

## Disposition

Springer's § 2255 petition (Doc. 1) and his request to supplement (Doc. 5) are both **DENIED**. The Court further **DENIES** a certificate of appealability. The **CLERK** is **DIRECTED** to enter judgment in favor of the United States and against Springer.

**IT IS SO ORDERED.**

**DATED: December 7, 2016**

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**